## ⊖ PELTON GRAHAM LLC

111 BROADWAY, SUITE 1503, NEW YORK, NEW YORK 10006
T 212.385.9700 ‖ F 212.385.0800 ‖ WWW.PELTONGRAHAM.COM

**BRENT E. PELTON, ESQ.**                                                          JUNE 1, 2017
PELTON@PELTONGRAHAM.COM

**VIA ECF**

Honorable Lorna G. Schofield
United States District Courthouse
Southern District of New York
40 Foley Square
New York, NY 10007

>          Re:    *Henry Cuevas v. Elio & Sons, LLC, et al.*
>                 <u>Civil Action No. 17-cv-02490 (LGS)</u>

Dear Judge Schofield:

We represent the Plaintiff in the above-referenced matter. This letter is submitted jointly with counsel for Defendants pursuant to the Fair Labor Standards Act (FLSA) and the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). Counsel for the parties respectfully submit that the attached negotiated Settlement Agreement (Exhibit A) constitutes a fair and reasonable compromise of this matter which should be approved by the Court.

### I.      Introduction

Plaintiff Henry Cuevas ("Cuevas" or the "Plaintiff") commenced this Action by filing a Collective and Class Action Complaint (Dkt. No. 1, the "Complaint") on behalf of himself and similarly situated employees of Defendants on April 6, 2017 seeking unpaid minimum wage and overtime premium pay pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* and the New York Labor Law ("NYLL") § 650 *et seq.*, as well as damages for unpaid spread-of-hours pay, wage notice and wage statement violations pursuant to the NYLL.  The Plaintiff worked as a dishwasher, food prep, and line cook for Defendants' restaurant.

On April 12, 2017, Defendants were served with the Summons and Complaint, setting their time to respond to the Complaint as May 3, 2017. (*See* Dkt. Nos. 10-12).  On April 14, 2017, without knowledge of Plaintiff's counsel, Plaintiff met with Defendant Halil "Elio" Djonbalij and two representatives of Defendants' restaurant at a bank in order to settle his claims against Defendants.  While at the bank, in exchange for signing a purported "release" of his wage claims against Defendants (the "Release"), Defendants paid Plaintiff $3,000.00 in cash.[1]

---

[1] A copy of the notarized Release is attached hereto as Exhibit B.

On May 4, 2017, after receiving no Answer to the Complaint, Plaintiff's counsel served a Notice of Default on all Defendants, providing them five (5) days to respond to avoid having Plaintiff's counsel proceed with seeking a default judgment.  On May 9, 2017, Defendants' counsel contacted Plaintiff's counsel and explained that Plaintiff had settled with Defendants and provided a copy of the Release.  The parties disputed the events surrounding the meeting at the bank and the viability of the Release, and decided to engage in settlement negotiations.  Ultimately, the parties were able to reach a settlement of the action on an individual basis for the Plaintiff.

## II.     The Court Should Find That the Settlement Is Fair and Reasonable

Courts scrutinize FLSA settlement agreements to ensure they are fair by examining the considerations set forth in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (Furman, J.).  Here, the parties believe their settlement is fair and reasonable under the *Wolinsky* factors.

### A.     Plaintiff's Potential Recovery

The first *Wolinsky* factor examines "the Plaintiff's range of possible recovery."  In this case, Plaintiff worked for the Defendants from in or around February 2016 through March 2017. Plaintiff alleged that he typically worked six (6) days per week, for a total of approximately sixty-two (62) hours per week, depending on the exact schedule that he worked during a particular week. For his work, Plaintiff asserts that he was paid a flat weekly salary with no overtime premiums for hours worked over forty (40) in a given workweek.  During the relevant time period, Plaintiff's weekly salary was as follows: from February to June 2016 - $420/week; June to August 2016 - $450/week; August 2016 to the end of Plaintiff's employment with Defendants - $500/week. Because of the hours that Plaintiff worked, at times his weekly salary did not compensate him at the applicable minimum wage for all hours worked. Defendants deny these allegations and disputed that Plaintiff was not properly paid and disputed the number of hours worked as alleged by Plaintiff.

Plaintiff's counsel created a damages analysis based on the above information to determine the Plaintiff's maximum potential damages for his claims.  The analysis provides that Cuevas is owed approximately $7,746.54 in unpaid minimum wage, approximately $6,772.86 in unpaid overtime, and approximately $3,694.29 in unpaid spread-of-hours premiums, for a total of $18,213.69 in "actual" unpaid wages.  After including liquidated damages under the FLSA and NYLL, interest under the NYLL, as well as statutory damages for wage notice and wage statement violations, the total damages equal approximately $46,647.82.

Pursuant to the settlement agreement between the parties, Defendants are agreeing to pay $19,000 to resolve Plaintiff's claims, including the $3,000 that was paid to Plaintiff on April 14, 2017. This represents more than full recovery of Plaintiff's actual damages and approximately forty percent (40%) of Plaintiff's alleged total damages, including liquidated damages, interest, and penalties, which would be the anticipated recovery if Plaintiff had received a favorable outcome at trial under both federal and state law.  The parties believe this is a fair recovery based on the risks associated with establishing the calculated damages, as well as the purported release

of Plaintiff's claims and the circumstances of the private settlement between the parties, which was a substantial factor in the Plaintiff's decision to agree to the settlement amount.

### B.      Expense of Continued Litigation

The second *Wolinsky* factor examines "the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses.'"  Settling Plaintiff's claims at this point will avoid continuing litigation for all parties. Cognizant of this, the parties engaged in settlement discussions very early in the litigation process and agreed to extend Defendants' deadline to respond to Plaintiff's Complaint in an effort to reach a resolution without incurring significant costs.  Had this action not settled, at a minimum all parties would have had to prepare initial disclosures, engage in formal written discovery pursuant to Rules 33 and 34, and conducting several depositions. In addition, counsel for all parties anticipated motion practice such as FLSA Collective Certification and Rule 23 Class Certification motions by Plaintiff and De-certification motions by Defendant. Settlement at this point will obviate such time-consuming and expensive litigation

### C.      The Risks of Litigation

The third *Wolinsky* factor examines "the seriousness of the litigation risks faced by the parties."  As with most wage and hour cases where there are incomplete or inaccurate records, there is serious risk in establishing the hours worked by the Plaintiff and the wages paid to the Plaintiff for his work.  If Defendants prevailed in establishing the hours they claim Plaintiff worked, the Plaintiff's claims for unpaid overtime are significantly diminished, if not entirely eliminated, while Plaintiff's minimum wage and spread-of-hours claims are no longer viable.  In addition, Plaintiff would face risks in establishing that Plaintiff's claims are appropriate for FLSA collective and Rule 23 class status.  Settling the Plaintiff's claims at this early stage guarantees Plaintiff significant compensation for his unpaid wage claims without the risk of continued litigation.

### D.      Arm's-Length Negotiation

The fourth *Wolinsky* factor examines "whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel.'"  The settlement negotiations took place over several weeks and consisted of debate concerning the merits and value of Plaintiff's claims and the Defendants' defenses and the impact of the Release on his claims.  All parties in this matter are represented by competent and experienced counsel and all negotiations were conducted at arm's length.

### E.      Possibility of Fraud or Collusion

The fifth *Wolinsky* factor examines the "possibility of fraud or collusion."  There is no evidence of any fraud or collusion in this case.  Indeed, the settlement was only finally achieved after weeks of negotiations after Plaintiff's counsel sent a Notice of Default and after Defendants provided the Release signed by Plaintiff to Plaintiff's counsel.

### III.    Settlement Terms

As set forth in the attached Settlement Agreement, the parties have agreed to settle this action for a total settlement amount of $19,000.00 (the "Settlement Amount").  Of that amount, $6,747.99 is payable to Plaintiffs' counsel, representing $621.99 in expenses for counsel's costs for filing and service of the complaint, plus one-third (33.33%) of the Settlement Amount, after subtracting those expenses (i.e. $6,126.00).  The remaining $12,252.01 is payable directly to Plaintiff (the "Net Settlement Amount"), $3,000 of which has already been paid to Plaintiff.

Keeping in line with the trend in this Circuit following *Cheeks*, the parties have agreed to a wage and hour release of claims for any claims arising before Plaintiff signed the Settlement Agreement. The parties also did not include a confidentiality provision and have specifically included language in the Agreement making it clear that nothing in the Agreement precludes the parties from truthfully communicating their experiences concerning the Action or the Settlement.

The Second Circuit in *Cheeks* questioned the propriety of an FLSA settlement agreement in another case that included: (1) "a battery of highly restrictive confidentiality provisions" (2) an overbroad release that would waive both current and future claims and (3) a fee for plaintiffs' attorneys of "between 40 and 43.6 . . . without adequate documentation to support such a fee award."  The Settlement Agreement before Your Honor, however, (1) does not contain a restrictive confidentiality provision; (2) does not contain a release which is one-sided or is to be applied to future claims and (3) the Plaintiffs' attorneys' fees are standard.  Most importantly, and unlike the settlement agreement at issue in *Cheeks,* the Settlement Agreement is available to Your Honor to explore and to assess whether it was likely the "fair result of a balanced negotiation, in which plaintiffs were represented by able counsel."[2]

### IV.    Plaintiff's Attorney's Fees and Expenses

As set forth in the attached Affidavit of Taylor B. Graham, Esq. (Exhibit C), as of June 1, 2017, Plaintiffs' counsel had spent more than 43 hours in prosecuting and settling this matter, resulting in a lodestar of $11,217.08.  Plaintiff's counsel had spent $621.99 in actual litigation costs. The portion of the settlement amount that plaintiffs seek as attorney's fees (i.e. $6,126.00) represents one-third (1/3) of the settlement amount, after subtracting the actual litigation costs, which is less than the lodestar amount but is consistent with what was agreed upon between Plaintiff and his counsel in his retainer agreement and the consent to become party plaintiff form filed with the Court. The retainer agreement between Plaintiff and his counsel set forth a contingency fee of one-third (1/3) of any settlement, plus reimbursement of actual litigation costs.

The hourly billing rates utilized by Plaintiff's counsel in calculating the lodestar are within the range paid to attorneys of similar experience and professional focus in the Southern District of New York.  In fact, the same rates have been approved for plaintiffs' counsel in connection with a recent wage and hour settlement in the Eastern District of New York, which typically has somewhat lower rates than the SDNY. *See Hall v. Prosource Techs., LLC*, 14-cv-2502(SIL), 2016

---

[2] *Lola v. Skadden,* No. 13-cv-5008 (RJS), 2016 U.S. Dist. LEXIS 12871, at *4 (S.D.N.Y. Feb. 3, 2016).

U.S. Dist. LEXIS 53791 at *38-41 (E.D.N.Y. April 11, 2016). Accordingly, Plaintiff's counsel submits that the attorney's fees component of the settlement is fair and reasonable.

\*        \*        \*        \*        \*

As demonstrated above, the settlement is a result of substantial negotiations and compromise by both parties. The parties believe that the settlement is completely fair, reasonable, and adequate to the Plaintiff and respectfully request that the Court approve the Agreement.

We appreciate Your Honor's attention to this matter. Please contact the undersigned counsel for the parties should you have any questions regarding this submission.

Respectfully submitted,

**PELTON GRAHAM LLC**                                   **Marku, Beno & Tsamblakos, PLLC**

By: ___/s/_____                                   By: ___/s/_____
Brent E. Pelton, Esq.                                   Isidoros I. Tsamblakos, Esq.
Taylor B. Graham, Esq.
111 Broadway, Suite 1503                                299 Broadway, Suite 910
New York, NY 10006                                      New York, NY 10007
Tel: (212) 385-9700                                     Tel: (212) 608-4140

*Attorneys for Plaintiff*                               *Attorneys for Defendants*

Encl.